FILED

MAR 0 1 2006

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re )<br>)<br>GOLDEN GEM GROWERS, INC., )<br>)<br>)<br>Debtor. ) | Case No. 6:01-09028-6B1<br>Chapter 11 |
| GOLDEN GEM GROWERS, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NELSON & COMPANY, INC., )<br>)<br>Defendant. )<br>) | Adversary No. 6:04-ap-00031-ABB |

## MEMORANDUM OPINION

This adversary proceeding came on for hearing on May 18, 2005 and October 31, 2005 ("Hearings"), upon Golden Gem Growers, Inc.'s ("Golden Gem" or "Plaintiff") Amended Complaint seeking declaratory judgment pursuant to Federal Rule of Bankruptcy Procedure 7001 and seeking damages for breach of contract against Nelson & Company, Inc. ("Nelson" or "Defendant").[1]

The issues for determination are whether: (1) Golden Gem should have deducted a portion of the reorganization expenses from the pool revenues to calculate the pool returns in

---

[1] Golden Gem's Complaint filed on February 19, 2004 originally sought declaratory relief pursuant to Rule 7001 in Count I and turnover of property of the estate, pursuant to 11 U.S.C. § 542(b) in Counts II and III. At trial, Nelson made an *Ore Tenus* motion to dismiss Counts II and III on the grounds that Counts II and III made an improper claim for turnover under the 11th Circuit's holding in Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.), 913 F.2d 1575, 1579 (11th Cir. 1990). Golden Gem filed a Motion to Amend the Complaint to Conform to the Evidence (Doc. No. 46). On August 9, 2005, the Court entered separate orders Granting Nelson's Motion for Directed Verdict and Denying Motion to Dismiss (Doc. No. 57), and Granting Golden Gem's Motion to Amend (Doc. No. 56) to include a prayer for relief for damages and a claim for breach of contract.

1

Fiscal Year 2001; (2) Golden Gem has the right to recover excess advances and capital equity credits made to Nelson; (3) Golden Gem is estopped from collecting any amounts from Nelson; (4) Section 607.15 Fla. Stat. prohibits Golden Gem from collecting excess advances or capital equity credits from Nelson; and (5) Nelson is in breach of contract. After reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises, the Court finds judgment is due to be entered in favor of Golden Gem and against Nelson in the sum of $124,536.79.

## JURISDICTION

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1334 and 157. Personal jurisdiction over the Defendant is proper pursuant to Florida Statutes § 48.193. Venue is proper pursuant to 28 U.S.C. § 1409.

## FINDINGS OF FACT

The Court adopts the facts stipulated by the parties (Doc. No. 30).

**Background.** <u>Pre-Petition.</u> Golden Gem was an agricultural cooperative wholly owned by its members, which was established and governed by Chapters 607 and 618 of the Florida Statutes. Golden Gem marketed and supplied produce under pooling arrangements for its citrus growing members. Pools were based on the variety of citrus and the citrus was packed for sale, as fresh fruit or processed for sale as juice.

Golden Gem entered into member agreements with Nelson on March 1, 1999, July 8, 1999, and April 4, 2000 (collectively, the "Agreements"). (Plaintiff's Ex. 1 (A-C); Defendant's Ex. 2). The Agreements had a term of one year, permitted Nelson to withdraw as a member from the cooperative in August of each year and incorporated Golden Gem's Amended By-Laws dated October 31, 1994 (the "By-Laws"). Nelson was a member and owner of Golden Gem pursuant to the terms of the Agreements and the By-Laws. The By-Laws and Agreements set

forth that Golden Gem could deduct money from the members' pool returns in the form of capital credits to generate capital for Golden Gem.

The By-Laws of Golden Gem grant the Board of Directors authority to assess members for losses the cooperative incurs in its business with the members:

> In the event the Association suffers a loss in any fiscal year *in handling members' products* or in the sale of supplies to or rendering services, the Board of Directors shall have full authority and discretion to handle such loss so that it will be borne by members in the manner determined by the Board to be most equitable and practicable.

Plaintiff's Ex. 6 – By-Laws, Article VII, Section 5 (emphasis added).

Golden Gem's Grower Member Agreements incorporate the By-Laws. The Agreements set forth:

> 5. . . . .MEMBERS having products in a particular pool shall *share ratably* in the *net* amount received therefrom.
> . . .
> 9. Except as herein noted, the By-Laws of the COOPERATIVE now in existence and all amendments thereto that may be hereafter adopted, and any contract or contracts between COOPERATIVE and agency or agencies employed or used by COOPERATIVE shall be parts of this Agreement and shall be binding upon the parties hereto.

Plaintiff's Ex.1 (A-C) (emphasis added).

Golden Gem paid Nelson advances which exceeded Nelson's *pro rata* share of the final pool returns by $205.62 during 1998 and 1999. Nelson did not repay the $205.62 in excess advances (the "1998-1999 Excess Advances"). A January 2000 Resolution (the "Resolution") adopted by Golden Gem's Board of Directors provided Golden Gem would not seek to collect excess advances paid to members, including the 1998-1999 season, who stayed with the cooperative, except in years where such grower's fruit returns were above the canner's average, as defined in FCPA form FB-1, "A" and "B" combined, and by no more in any one year than the excess of the returns above the canner's average. (Plaintiff's Ex. 18; Defendant's Ex. 5).

Golden Gem delivered a letter to Nelson on April 12, 2000 setting forth the policy adopted by the Resolution and informing Nelson that, if Nelson remained in the cooperative, Golden Gem would only collect excess advances when the pool returns obtained by Golden Gem were above the canner's average. (Defendant's Ex. 15). Nelson contends it relied on the April 12, 2000 letter in remaining a member of the cooperative. Nelson contends based on that reliance, the Resolution estops Golden Gem from recovering excess advances.

The facts and circumstances do not support Nelson's contention it remained in the cooperative only upon its reliance that Golden Gem would only collect excess advances when the pool returns obtained by Golden Gem were above the canner's average. Nelson's contention, it would have canceled its membership, if it had been required to pay the $205 excess advance in April or May of 2000, is unsupported by the evidence. Golden Gem's promise to abstain from collection was not substantive nor crucial to Nelson's decision to remain in the cooperative. Nelson's President, Arthur Evans, testified repayment of the 1999 excess advances was not a major factor in Nelson's decision to remain a member of the cooperative. (Tr. 97). The communications between Nelson and Golden Gem did not indicate Nelson would make money on the 2000-2001 pool. (Tr. 108). Nelson did not establish Golden Gem made a substantive promise to Nelson, which caused Nelson to remain in the cooperative and continue to send fruit.

It is undisputed Golden Gem did not exceed the canner's average from 1998 through 2001. Nelson made the following deliveries of citrus to Golden Gem pursuant to the Agreements during the fiscal year ending August 31, 2001 ("Fiscal Year 2001"):

| Variety | Number of Boxes | Pounds Solids |
|---|---|---|
| Orlando | 40,008 | 266,365.49 |
| Fallglo | 6,738 | 42,455.55 |
| Nova | 1,382 | 9,059.66 |
| Murcott/Eliminations | 50 | 327.55 |
| Navel/Eliminations | 5,703 | 36,087.63 |
| TOTALS[2]: | 53,881 | 354,295.88 |

The parties stipulate Golden Gem was obligated to pay Nelson its *pro rata* share of the revenues Golden Gem earned on the sale of fruit in Nelson's pools, after deducting the *pro rata* share of the costs and expenses applicable to that fruit pursuant to the Agreements. Golden Gem paid each member's *pro rata* share of the net profits on a per pound solid basis. Those profits are referred to in the industry as "final pool returns." The parties stipulate Golden Gem owed Nelson $1,824.68, as of August 31, 2001 for unpaid fresh fruit pools. Nelson is entitled to setoff against any sums due Golden Gem.

Article VII, Section 1 of the By-Laws provide Golden Gem may deduct 25 cents per box for a total deduction of $12,032 from the amounts Golden Gem owed Nelson during the Fiscal Year 2001 for Nelson's capital credits (the "Equity Credits"). There is no reasonable expectation the dispute over the sums due Golden Gem or the setoffs due Nelson will continue or will be repeated.

Post-Petition. Golden Gem filed for Chapter 11 relief on September 14, 2001. An Order rejecting all executory contracts and leases of Golden Gem (Doc. No. 325 Main Case) ("Rejection Order") was entered on May 9, 2002. The Rejection Order encompasses all executory contracts and leases of Golden Gem, with the exception of a lease with Lake Cogen Ltd. and a lease agreement with AT&T Wireless Services of Florida, Inc. Golden Gem rejected the Agreements and the incorporated By-Laws pursuant to the Rejection Order.

---

[2] The parties stipulated to these figures. (Doc. No. 30). Nelson disputes whether several expenses incurred by Golden Gem in the Fiscal Year 2001 should impact the pool returns for that year.

Nelson filed a $161,081.25 Proof of Claim (Main Case Claim No. 390) for $262,220.09, the fair market value of fruit less $130,467.75 for picking and hauling charges plus return of capital account of $29,328.91. (Plaintiff's Ex. 2). Nelson now contends its claim to be $31,868.83 (Doc. No. 85) after stipulating to underlying figures used in calculating pool returns. (Doc. No. 30).

Reorganization Expenses. Golden Gem incurred $1,076,925.24 in expenses, including monies paid to "turn around professionals" and third parties, in Fiscal Year 2001 ("Reorganization Expenses"). Golden Gem deducted a portion of the Reorganization Expenses from the pool revenues to determine the minimum pool returns, reducing payments to the members.

Golden Gem contends its accountant used his best judgment in making the determination to deduct the Reorganization Expenses. (Tr. 18-19; Bill Kudlet's Dep. P.6, lines 6-13; p.8, lines 8-24. (Doc. No. 20)). Golden Gem's former CEO supported the accountant's decision to deduct the Reorganization Expenses. Golden Gem concedes there is no clear directive established under generally accepted accounting principles calling for deduction of these expenses. (Tr. 73-74, 129-130). Golden Gem's former auditor testified he believed it was improper to include the Reorganization Expenses in the pool calculations. (Tr. 73 & 75).

No persuasive evidence was presented authorizing deduction of the Reorganization Expenses. The Reorganization Expenses were not directly related to picking, hauling and sale of fruit. They were non-recurring expenses. There is no provision in the Agreements providing for deduction of the Reorganization Expenses. They were improperly deducted from the pool revenues in calculating the pool returns. The pool returns increase by 2.45 cents per pound solid, when the improperly-deducted Reorganization Expenses are added back to the pool revenues.

The final pool returns for the Fiscal Year 2001 were calculated using the financial records of Golden Gem. Golden Gem's Fiscal Year 2001 final pool returns for orange pools, on a per

pound solid basis, are based on deduction of the Reorganization Expenses and certain stipulations of the parties as to the pool returns excluding Reorganization Expenses:

| Orange Pool | Maximum Pool Return Per Pound Solid |
|---|---|
| Early & Mid Non-Premium | 18.98 cents |
| Early & Mid Premium | 19.74 cents |
| Valencia Non-Premium | 22.77 cents |
| Valencia Premium | 23.68 cents |
| Mandarin Non-Premium | 8.98 cents |
| Mandarin Premium | 9.34 cents |
| Navel Non-Premium | 3.98 cents |
| Navel Premium | 4.14 cents |
| K-Early Non-Premium | (1.02 cents) |
| K-Early Premium | (0.98 cents) |

Nelson's *pro rata* share of the final pool returns for the Fiscal Year 2001, excluding the Reorganization Expenses, are as follows:

| Variety | Pound Solids | Max. Pool Return Per Pound Solid | Nelson's Max. Pool Returns |
|---|---|---|---|
| Orlando | 266,365.49 | 8.98 cents | $23,919.62 |
| Fallglo | 42,455.55 | 8.98 cents | 3,812.51 |
| Nova | 9,059.66 | 8.98 cents | 813.56 |
| Murcott/Elim. | 327.55 | 18.98 cents | 62.17 |
| Navel/Elim. | 36,087.63 | 3.98 cents | 1,436.29 |
| Nelson's Pool Return | | | $30,044.15 |

Pick and Haul Eliminations Advances. Golden Gem paid $131,555.36 to third parties to pick and haul Nelson's fruit and paid $12,612.64 to Nelson for its Murcott eliminations before Golden Gem calculated the final pool returns during the Fiscal Year 2001 (the "2000-2001 Excess Advances). Nelson disputes these were advances, instead characterizing them as partial payments or pre-payments.

The preponderance of the evidence establishes Golden Gem's payments to third parties for picking and hauling Nelson's fruit and the interim payments to Nelson for Murcott eliminations were advances. The course of dealings between the parties, Nelson's internal

7

record keeping and the Agreement provisions establish these payments were advances. Golden Gem routinely deducted Nelson's pick and haul costs and interim payments for eliminations from Nelson's *pro rata* share of the pool returns pursuant to the Agreements and the course of dealings between the parties. Nelson's Proof of Claim[3] (Main Case Claim No. 390) deducted the pick and haul costs from the pool returns for the Fiscal Year 2001:

> 5. Total amount of claim at time case filed: $260,220.09 fair market value of citrus fruit sold in the 2000-2002 citrus market *minus $130,467.75 picking and hauling charges")*

Plaintiff's Ex. 2 (emphasis added).

Nelson's internal document titled "Nelson and Co. Cannery Fruit Shipped" dated July 31, 2002, reflected Nelson received from Golden Gem $130,524.74 as *"Advance to Date."* (Plaintiff's Ex. 20) (emphasis added). The Agreements set forth Nelson was "entitled to pre-harvest advance and delivery advance." (Plaintiff's Ex. 1(A-C)). The addendum to each of Nelson's Agreements stated:

> MEMBER entitled to pre-harvest and post harvest delivery advances. Members paid Accelerated pool return.
> . . .
> Pre-harvest advance rates, post harvest advance rates and Premium Pool return differentials are established each year by the Board of Directors . . . Said pool charges and advance rates, as determined by the Board of Directors, shall be determined a part of this Agreement.

Plaintiff's Ex. 1 (A-C). Nelson is not sharing *"ratably"* in the *"net"* pool proceeds as required by the Agreements by receiving advances in excess of its pool returns.

The Amended Chapter 11 Plan of Liquidation (the "Plan") was confirmed on July 17, 2002 (Main Case Doc. No. 430). The Plan appointed Daniel Dempsey ("Dempsey") as Disbursing Agent. Dempsey was empowered pursuant to the Plan to bring actions against Golden Gem's members "for reimbursement of advances made in respect of anticipated profits,

---

[3] The parties stipulate Nelson's claim is now $31,868.83 (Doc. No. 85). Calculated without reorganization expenses, Golden Gem acknowledges this sum as a setoff. Id.

which did not materialize." (Plaintiff's Ex. 7). Dempsey, as Disbursing Agent pursuant to the Plan, was vested with the powers of the Board of Directors pursuant to the By-Laws. Golden Gem would suffer a loss on its members' fruit in the Fiscal Year 2001 if Golden Gem did not recover the 2000-2001 Excess Advances from its members. (Tr. 43). Golden Gem borrowed money to pay the 2000-2001 Excess Advances and without recovery, the members would be paid greater returns than the cooperative generated. Dempsey sent a letter to Nelson on August 30, 2002 demanding it repay certain sums allegedly advanced to Nelson by Golden Gem for the years 1998-1999 and 2000-2001. (Plaintiff's Ex. 9). Nelson contends it is not obligated to repay these sums.

The parties filed a Joint Pretrial Statement (Doc. No. 30) and a Consent Response to Preliminary Order (Doc. No. 85) stipulating to many facts regarding the relationship between the parties, the calculation of the pool returns, pool accounting issues and the admissibility of deposition testimony and exhibits.

## CONCLUSIONS OF LAW

### Count I

### Declaratory Relief

Count I alleges Golden Gem is entitled to a declaratory judgment because of the dispute regarding whether the Agreements and the By-Laws create a contractual duty for Nelson to repay certain *pro rata* costs and expenses associated with processing, packaging and selling the citrus in the Grower's Pools.

There must be a substantial continuing controversy between two adverse parties for a court to grant declaratory relief. Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir.1999). The moving party must allege facts demonstrating a reasonable expectation that the injury suffered will continue or will be repeated in the future. Id.

The cause of action brought by Golden Gem is a breach of contract for payment of debt. No evidence indicates a substantial continuing controversy between Golden Gem and Nelson. There are no facts in evidence to support a reasonable expectation the injury suffered will continue or will be repeated in the future. Golden Gem has been liquidated and will not be subject to any continuing injury from Nelson. Golden Gem has failed to establish a substantial continuing controversy with Nelson, and its requested relief in Count I is due to be denied.

### Counts II and III

### Breach of Contract

The Complaint alleges Nelson has a contractual duty under the Agreements and the By-Laws to pay certain *pro rata* costs and expenses associated with: (i) processing, packaging and selling the citrus in the Grower's Pools; and (ii) expenses associated with reorganizing Golden Gem. The Complaint alleges Nelson breached its duty by failing to pay the *pro rata* costs.

To establish a breach of contract pursuant to Florida law a claimant must demonstrate existence of a contract, breach of that contract and damages as a result of that breach. Anthony Dist., Inc. v. Miller Brewing Co., 941 F.Supp. 1567, 1574 (M.D. Fla. 1996). The Supreme Court presumes the preponderance-of-the-evidence standard in civil actions between private litigants unless particularly important individual interests or rights are at stake. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). No such situation exists in this matter. The preponderance-of-the-evidence standard is applicable in this case.

Reorganization Expenses. Neither the Agreements nor the By-Laws contain a specific provision creating an obligation on the part of Nelson to pay the expenses associated with reorganization. Golden Gem incurred $1,076,925.24 in expenses, including monies paid to "turn around professionals" and third parties in Fiscal Year 2001. Golden Gem deducted a portion of the Reorganization Expenses from the pool revenues to determine the minimum pool returns, reducing payments to the members.

Golden Gem contends its accountant used his best judgment in making the determination to deduct the Reorganization Expenses. Golden Gem's former CEO supported the accountant's judgment. Golden Gem concedes there is no clear directive established under generally accepted accounting principles calling for deduction of these expenses. Golden Gem's former auditor testified he believed it was improper to include the Reorganization Expenses in the pool calculations.

No evidence was presented establishing a basis in law, contract or general accounting practices for deducting a portion of the Reorganization Expenses from the pool revenues to calculate the pool returns in the Fiscal Year 2001. The Reorganization Expenses were not directly related to picking, hauling and sale of fruit. They were non-recurring expenses. The Reorganization Expenses were improperly deducted from the Fiscal Year 2001 pool revenues, increasing the pool returns by 2.45 cents per pound.

Pick and Haul and Eliminations Advances (2000-2001 Excess Advances). Nelson filed a Proof of Claim for $260,220.09 fair market value of fruit minus $130,467.75 *picking and hauling charges.* (Plaintiff's Ex. 2). A proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bank. P. 3001(f). It demonstrates the course of dealing between the parties. Nelson admits in its calculation of its original Proof of Claim[4] deduction of picking and hauling charges is warranted. Nelson's calculation is consistent with testimony that in the course of dealings between the parties, Golden Gem routinely deducted Nelson's pick and haul costs and interim payments for eliminations from Nelson's pro rata share of the pool returns. It is also consistent with Nelson's contractual duty to "share ratably in the net amount received" as set forth in the Agreements.

---

[4] Nelson has not amended its Proof of Claim but now contends the sum due is $31,868.83 based upon stipulation of the parties to underlying figures.

11

Golden Gem borrowed money to pay the 2000-2001 Excess Advances. It will have paid members greater returns than the cooperative generated, if it does not recover the excess advances. Nelson is not sharing "ratably" in the "net" pool proceeds by receiving advances in excess of its pool returns, as provided in the Agreements.

Golden Gem's Rejection of Executory Contract is Breach of Contract. Golden Gem rejected the Grower Member Agreements, pursuant to the Rejection Order. The rejection of an executory contract creates a statutory breach pursuant to Section 365(g) of the Bankruptcy Code. The breach is not final and conclusive because it is still subject to the claims process pursuant to Bankruptcy Code Section 502. In re G.I. Ind., Inc., 204 F.3d 1276, 1282 (9th Cir. 2000). Golden Gem was the party in breach of its express contract, authorizing Nelson a claim for damages pursuant to 11 U.S.C. § 502(g). Id; In re Waldron, 36 B.R. 633, 642 (Bankr. S.D. Fla. 1984), rev'd on other grounds, 785 F.2d 936 (11th Cir. 1986); In re Sun City Inv., Inc., 89 B.R. 245, 248 (Bankr. M.D. Fla. 1988).

The measure of damages to which a party is entitled for the breach of an executory contract is a question of state law. Waldron, 36 B.R. at 633; In re Besade, 76 B.R. 845, 847 (Bankr. M.D. Fla. 1987). Damages for breach of contract, in Florida, must place the non-breaching party in the same financial position as he would have occupied had the contract been performed." Waldron, 36 B.R. at 636. The guiding principle of damages suffered by the non-breaching party is "just compensation." Grossman Holdings Ltd. v. Hourihan, 414 So.2d 1037, 1039 (Fla. 1982).

Nelson is not responsible for the Reorganization Expenses. No Reorganization Expenses would have passed to the members under a fully performed contract. Nelson is responsible for picking and hauling charges. Picking and hauling charges would have been deducted from the fair market value of the fruit sold as demonstrated by Nelson's Proof of Claim and the course of dealings between the parties. The Agreements required Nelson to share ratably in the net pool

proceeds. The 1998-1999 Excess Advances and the 2000-2001 Excess Advances would have been deducted pursuant to the Agreements in determining Nelson's ratable share of the net proceeds.

Estoppel. Nelson asserts estoppel as an affirmative defense to Golden Gem's claim for breach of contract and recovery of excess advances. Nelson contends it remained in the cooperative because Golden Gem agreed to only collect over advances in years in which Nelson exceeded the canner's average. To establish estoppel pursuant to Florida law a claimant must show: (i) a promise was made; (ii) the promisee detrimentally relied on the promise; and (iii) the promise is definite, of a substantive nature, and established by clear and convincing evidence. W.R. Grace & Co. v. Geodata Serv., Inc. 547 So.2d 919, 920 (Fla. 1989).

The preponderance of the evidence establishes repayment of the 1999 excess advances was not a major factor in Nelson's decision to maintain its membership in the cooperative. Nelson argues it relied on several communications from Golden Gem in 2000 in making its decision to send fruit to Golden Gem in the Fiscal Year 2001. The evidence does not support Nelson detrimentally relied on these communications, nor does the evidence support any "promises" in the letters were definite or substantive in nature. The communications between Nelson and Golden Gem did not indicate Nelson would make money on the 2000-2001 pool.

Nelson's contention it would have canceled its membership, if it had been required to pay the $205 excess advance in April or May of 2000 is not supported by the evidence. Golden Gem's promise was not substantive with only $205 at issue. Nelson did not establish Golden Gem made a substantive promise to Nelson, which caused Nelson to remain in the cooperative and continue to send fruit. Nelson failed to establish the elements of estoppel, that specific promises were made that were substantive and detrimentally relied upon by Nelson in maintaining its membership and continuing to send fruit.

Florida courts have uniformly held the law will not imply a contract where a valid written contract exists dealing with the same subject. See In re Annicott Excellence, LLC, 259 B.R. 782, 793 (Bankr. M.D. Fla. 2001); Auto Dealers Group v. Auto Dealer Serv., Inc. (In re Auto Dealer Services, Inc.), 65 B.R. 681, 685 (Bankr. M.D. Fla. 1986); In re Phillip Watts Ent., Inc., 186 B.R. 735, 740 (Bankr. N.D. Fla. 1995). It is not appropriate to look outside the Agreements or By-Laws. The Agreements and By-Laws address deduction from members' proceeds of pro rata share of cost and expenses. Nelson's Proof of Claim acknowledges deduction of expenses as appropriate.

The Eleventh Circuit Court of Appeals has recognized bankruptcy courts, as courts of equity, have the power to adjust claims to avoid injustice or unfairness. In Re Saybrook Mfg. Co., Inc. 963 F.2d 1490, 1495 (11th Cir. 1992). Valid contractual obligations are not to be disregarded. In re Welzell, 275 F.3d 1308, 1319 (11th Cir. 2001). It would not be equitable to look outside the Agreements and By-Laws, when these documents specifically address deduction of *pro rata* share of cost and expenses in calculating pool returns and are supported by Nelson's Proof of Claim. It is neither reasonable nor equitable to the creditors in the bankruptcy case to bind Golden Gem to a letter to Nelson on the pretense Nelson was induced into remaining a member of the cooperative over repayment of $205.

Fla. Stat. § 618.15(2). Nelson relies upon Fla. Stat. § 618.15(2) to preclude Golden Gem from claiming breach of contract by Nelson for failing to cover the charges of picking, hauling, packaging and selling. It provides in relevant part: "no member shall be liable for the debts of the association to an amount exceeding the sum remaining unpaid on his or her membership fee or subscription to capital stock." Fla. Stat. § 618.15(2) (2004). The statute distinguishes association debt from member debt by its plain language. "Association" is defined as "any corporation organized as a cooperative association, for the mutual benefit of its members..." Fla. Stat. § 618.01(3). It is reasonable to conclude, the debt for the mutual benefit of its

members, is the type of debt referenced in the statute. This type of debt may typically be rent, clerical fees, phone and utilities.

The type of debt at issue is attributable directly to Nelson: the charges for picking and hauling Nelson's fruit; interim payments to Nelson for its Murcott eliminations; advances to Nelson specifically; and Nelson's capital equity credits. These are not "debts of the association," but debts of a member established by the Agreements and By-Laws.

<u>1998-1999 Excess Advances and the Resolution.</u> Nelson asserts, an affirmative defense, the Resolution passed by the Board in 2000 bars Golden Gem from recovering the 1998-1999 Excess Advances. Florida law will not imply a contract where a valid one exists. The Resolution does not constitute a contract. The Bankruptcy Code permits rejection of burdensome executory contracts. 11 U.S.C. § 365 *et. seq*. Golden Gem's Agreements with Nelson were rejected.

The forgiveness of payment of the 1998-1999 Excess Advances or the 2000-2001 Excess Advances should not be imposed upon Golden Gem. It is clear from the text of the Resolution and testimony, Golden Gem planned to be in business long enough to collect the 1998-1999 Excess Advances. The filing of bankruptcy, unanticipated at the time of the Resolution, caused Dempsey to seek repayment of the 1998-1999 Excess Advances and the 2000-2001 Excess Advances. The advances would have to have been repaid pursuant to the Agreements and by authority of the By-Laws had the contract not been rejected.

A resolution is not a bylaw, but an informal enactment of a temporary nature providing for the disposition of certain administrative matters. <u>Brennan v. Minneapolis Soc. For Blind, Inc.</u> 282 N.W.2d 515, 523 (Minn.1979). The Resolution was only a temporary measure. Another resolution could have been adopted due to changed circumstances requiring repayment of all advances. Dempsey has the authority to recover excess advances from its members pursuant to the Plan and the By-Laws. The Resolution, which was informal and temporary in

15

nature, does not preclude Golden Gem's action to recover the 1999 Excess Advances or the 2000-2001 Excess Advances given the change in circumstances since the Resolution was passed.

Capital Equity Credits. Article VII, Section 1 of Golden Gem's By-Laws provided Golden Gem could deduct capital equity credits from amounts Golden Gem owed to its members. The parties stipulated Golden Gem deducted $12,032 (25 cents per box of fruit Nelson delivered to Golden Gem) from the amounts Golden Gem owed Nelson during the Fiscal Year 2001. Golden Gem was a going concern and had not filed for bankruptcy, as of August 31, 2001. Golden Gem had the right to deduct Equity Credits from any pool returns it owed to Nelson for the Fiscal Year 2001, notwithstanding any rights Golden Gem might have to setoff advances against those pool returns pursuant to the By-Laws and the Agreements.

## Conclusion

Golden Gem has failed to establish it is entitled to declaratory relief and the relief requested in Count I is due to be denied. Golden Gem has established by the preponderance of the evidence that Nelson is liable for repaying Golden Gem (i) the advances which exceeded Nelson's pool returns in the Fiscal Year 2001, the 2000-2001 Excess Advances; (ii) the Equity Credits in the Fiscal Year 2001; and (iii) the 1998-1999 Excess Advances. It would be inequitable to the creditors of Golden Gem which remain unpaid to allow Nelson, an owner of Golden Gem, to retain advances for profits which never materialized.

Golden Gem has failed to establish by the preponderance of the evidence the Reorganization Expenses should have been deducted from the pool revenues to calculate the pool returns. The Minimum Pool Returns are increased by 2.45 cents per pound solid to compensate for the erroneous deduction of the Reorganization Expenses.

## DAMAGES

Nelson's *pro rata* share of the final pool returns for the Fiscal Year 2001 are calculated without the Reorganization Expenses as follows:

| Variety | Pound Solids | Pool Return PPS | Nelson's Pool Returns |
|---|---|---|---|
| Orlando | 266,365.49 | 8.98 cents | $23,919.62 |
| Fallglo | 42,455.55 | 8.98 cents | 3,812.51 |
| Nova | 9,059.66 | 8.98 cents | 813.56 |
| Murcott/Elim. | 327.55 | 18.98 cents | 62.17 |
| Navel/Elim. | 36,087.63 | 3.98 cents | 1,436.29 |
| Final Pool Return | | | $30,044.15 |

The net amount due Golden Gem from Nelson is calculated as follows:

| | |
|---|---|
| Pool Return due to Nelson: | $30,044.15 |
| Unpaid Fresh Fruit Pools: | +1,824.68 |
| Subtotal of Nelson's Credits | $31,868.83 |

Less:
| | |
|---|---|
| Payments to Third Parties | (131,555.36) |
| Advances on Eliminations | (12,612.64) |
| Capital Equity Credit Charges | (12,032.00) |
| 1998-99 Excess Advances | (205.62) |
| Subtotal: | ($156,405.62) |

| | |
|---|---|
| Crediting Nelson's *pro rata* share of pool returns | $31,868.83 |
| Net Amount Nelson Owes Golden Gem: | ($124,536.79) |

The Court will enter a separate judgment against Nelson in the sum of $124,536.79 consistent with these Findings of Fact and Conclusions of Law.

DONE AND ORDERED in Orlando, Florida, on the 1st day of March, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge